UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JENNIFER L. SMITH, ) | |
| ) | |
| Plaintiff, ) | Case No. 10 cv 5533 |
| ) | |
| v. ) | Magistrate Judge Susan E. Cox |
| ) | |
| MICHAEL J. ASTRUE, Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM OPINION AND ORDER

Plaintiff Jennifer L. Smith ("plaintiff") seeks judicial review of a final decision denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.[1] The parties have filed cross-motions for summary judgment. Plaintiff seeks a judgment remanding defendant Commissioner Michael J. Astrue's ("defendant" or "Commissioner") denial of disability insurance benefits ("DIB") but affirming the Commissioner's decision that plaintiff is entitled to supplemental security income ("SSI"). The Commissioner seeks summary judgment affirming his decision in its entirety. For the reasons set forth below, plaintiff's motion is granted [dkts. 20, 22] and the Commissioner's motion is denied [dkt 23].

**I.  Procedural History**

On September 14, 2005, plaintiff filed an application for SSI and DIB. Plaintiff alleged she was disabled as of December 31, 2001 because she suffered from a mood disorder and post-traumatic stress disorder ("PTSD").[2] The Commissioner denied plaintiff's claims for SSI and

---

[1] 42 U.S.C. § 405(g).
[2] R. at 155.

DIB on November 09, 2005.[3] On reconsideration, plaintiff's request was again denied on January 20, 2006.[4] On March 28, 2006, plaintiff requested a hearing before an administrative law judge ("ALJ").[5] On May 16, 2008, an administrative hearing was held before ALJ John M. Wood.[6] On September 25, 2008, ALJ Wood issued a decision granting the plaintiff SSI and denying her DIB.[7] On November 28, 2008, plaintiff filed a request for review of ALJ Wood's decision with the Social Security Administration Appeals Council ("Appeals Council").[8] The Appeals Council denied plaintiff's request for review.[9] Therefore, ALJ Wood's September 25, 2008 decision stands as the final decision of the Commissioner.[10] Plaintiff filed this action on September 1, 2010.[11]

## II. Factual Background

The record consists of medical evidence, a hearing transcript, and the ALJ's administrative opinion. We will briefly summarize each.

### A. Medical Evidence

Medical documents contained in the record shows that plaintiff was first treated for mental health issues beginning in 1997 at Community Hospital in Ottawa, Illinois.[12] After being arrested for drinking at the age of fifteen, plaintiff was brought to the hospital on October 6, 1997 after stating that she had thought of killing herself.[13] While in the emergency room,

---

[3] R. at 80.
[4] R. at 86, 90.
[5] R. at 94.
[6] R. at 32.
[7] R. at 20.
[8] R. at 4.
[9] R. at 1.
[10] *Estok v. Apfel*, 152 F.3d 636, 637 (7th Cir.1998).
[11] Dkt. 1.
[12] R. at 408.
[13] R. at 405.

plaintiff "became agitated and reportedly kicked at the ER staff."[14] Ultimately, she was diagnosed with alcohol abuse and acute alcohol intoxication.[15]

On August 8, 2001, plaintiff began seeing John E. Podzamsky, D.O.[16] Dr. Podzamsky's treatment notes indicated that Dr. Podzamsky treated plaintiff on multiple occasions between August 8, 2001 and August 16, 2006.[17] Dr. Podzamsky indicated that plaintiff alternated taking 150 milligrams of Wellbutrin[18] and Prozac[19] between September 2001 and June 2003.[20] In January 2002, Dr. Podzamsky's notes indicated that plaintiff was suffering from depression and that all she wanted to do was sleep.[21] Also during this time period, Dr. Podzamsky's noted that plaintiff had symptoms that likely exhibited anxiety, dysthmetic disorder, and anger problems.[22] In March 2002, Dr. Podzamsky's noted that plaintiff was irritable and upset at everyone and that she lost jobs in the past due to her anger issues.[23]

On November 9, 2005, a Psychiatric Review Technique was completed by Patricia Beers, Ph.D.[24] Dr. Beers did not examine plaintiff, but made her mental assessment based on the medical records.[25] Dr. Beers opined on plaintiff's limitations in various categories. According to Dr. Beers, plaintiff had mild restrictions of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, and pace, and

---

[14]*Id.*
[15]*Id.*
[16]R. at 239.
[17]R. at 240-44.
[18]Wellbrutin is the trademark for a preparation of bupropion hydrochloride, an antidepressant medication. Dorland's Medical Dictionary, available at www.dorlands.com.
[19]Prozac is the trademark for preparations of fluoxetine hydrochloride, an antidepressant medication. Dorland's Medical Dictionary, available at www.dorlands.com.
[20]R. at 240.
[21]R. at 240-44.
[22]*Id.*
[23]*Id.*
[24]R, at 287-300.
[25]R. at 299.

one or two episodes of decompensation.[26] Dr. Beers diagnosed plaintiff with posttraumatic stress disorder and mood disorder.[27]

Also on November 9, 2005, Dr. Beers completed a Mental Residual Capacity Assessment.[28] The assessment required Dr. Beers to determine plaintiff's limitations in twenty categories.[29] For each category, Dr. Beers assessed whether plaintiff was "not significantly limited," "moderately limited," or "markedly limited."[30] For five of the categories, Dr. Beers marked "moderately limited."[31] For all other categories, Dr. Beers marked "not significantly limited."[32]

In August 2006, Yung S. Chung, M.D. examined plaintiff and reported that plaintiff was depressed, but no longer had issues with anxiety or dysthymic disorder.[33] Dr. Chung prescribed plaintiff 150 milligrams of Wellbutrin.[34] Dr. Chung also noted that plaintiff suffered from depression for the last nine years, off and on with varying severity.[35]

Finally, on September 5, 2008, Mark Langgut, Ph.D. completed a consultive examination.[36] Dr. Langgut spent fifty-five minutes with plaintiff and completed an Consultive Examination Report on September 7, 2008.[37] He also completed an addendum to that report on September 9, 2008.[38] Of note, Dr. Langgut found that plaintiff had marked limitations in

---

[26] R. at 297.
[27] R. at 290, 292.
[28] R. at 283-86.
[29] Id.
[30] Id.
[31] Id.
[32] Id.
[33] R. at 391.
[34] Id.
[35] Id.
[36] R. at 494.
[37] R. at 489-97.
[38] R. at 497-99.

interacting appropriately with the public, supervisors, and co-workers.[39] He also found mild limitations in plaintiff's ability to "respond appropriately to usual work situations and to changes in a routine work setting."[40] Dr. Langgut concluded that plaintiff suffered from posttraumatic stress disorder and bipolar II, without psychotic symptoms.[41] However, Dr. Langgut did not indicate a date when he believed these symptoms or conditions began.[42]

**B.    May 16, 2008 Hearing**

Plaintiff's administrative hearing took place on May 16, 2008 in Peru, Illinois.[43] Plaintiff and an impartial vocational expert ("VE"), Ronald Malik, testified at the hearing.[44]

Plaintiff testified that she is married and has three children, ages four, five and nine.[45] Plaintiff stated that she is able to drive, but that she never leaves the house without her husband.[46] Outside of her immediate family, the only other family members plaintiff interacted with was her aunt, who visited plaintiff at home once a week.[47] Plaintiff stated that she only leaves the house to go grocery shopping or to attend doctors' appointments.[48] Plaintiff explained that the reason she does not leave the house by herself is because of anxiety.[49]

Plaintiff testified that the highest level of education that she completed was her GED.[50] After further probing by the ALJ, however, the plaintiff conceded that since 2007 she has been

---

[39]R. at 492.
[40]*Id.*
[41]R. at 497.
[42]R. at 489-499.
[43]R. at 104.
[44]*Id.*
[45]R. at 35.
[46]R. at 60.
[47]R. at 50-51.
[48]R. at 60.
[49]R. at 52.
[50]R. at 36.

taking online college classes for an accounting degree.[51] Plaintiff stated that she takes two classes at a time and spends sixteen hours a day on school work because she has to keep re-reading the material.[52] Although plaintiff testified that she gets all A's in her classes, she also indicated that her depression and mood swings interfere with her school work on some days.[53] Further, plaintiff explained that although she can handle school work, she would not be able to handle a job because of the interaction with people.[54]

As for her work history, plaintiff testified that she had two jobs as a certified nursing assistant ("CNA").[55] Plaintiff stated that she got fired from both CNA jobs.[56] Plaintiff lost the first job because of her anger issues.[57] As for the second CNA job, plaintiff could not recall why she was fired.[58] Plaintiff testified that she generally did not have trouble finding a job, but that her mood swings, depression and anxiety prevent her from keeping a job.[59] Plaintiff testified that since December 31, 2001, she worked only one job, as a telemarketer for two days in 2005.[60] This was the only testimony elicited from the plaintiff regarding her work history.

In regards to her mental health, plaintiff testified that she was currently seeing two doctors regularly.[61] She stated that she takes medications and her doctors are still working to find the right combination of medication.[62] These medications include Wellbutrin, Celexa, Abilify, Klonopin, and Zanex.[63] Despite these medications, plaintiff testified that she has "bad

---

[51]R. at 43.
[52]R. at 45.
[53]R. at 53.
[54]R. at 52.
[55]R. at 63.
[56]Id.
[57]Id.
[58]Id.
[59]R. at 38.
[60]R. at 36-37.
[61]R. at 39.
[62]Id.
[63]R. at 57.

days" a couple of times a week.[64] During these "bad days" she feels depressed and has mood swings.[65] Plaintiff testified that when she feels depressed she lays on the couch all day, and when she has mood swings she has to keep to herself.[66] Plaintiff said that she started seeing a doctor for her symptoms in 1999, but that the symptoms became bad in 2001.[67] Plaintiff testified that the symptoms she has now are the same ones that existed in 2001.[68]

Plaintiff also testified about several altercations that she believes were a result of her mood swings.[69] These "altercations" have occurred with strangers and with her husband.[70] For example, plaintiff stated that she got into an altercation with cashier at a grocery store because the cashier requested to see her identification.[71] In another incident, plaintiff tried to run her husband over with a van because she was upset with him for drinking.[72]

Next, the VE, Ronald Malik, testified. The VE reviewed the exhibits in the file and listened to plaintiff's testimony before testifying. First, the VE testified that plaintiff's limitations would eliminate plaintiff's ability to complete her past work.[73] As for other jobs the plaintiff could complete, the VE stated that representative jobs available for plaintiff were a hand packager and housekeeper.[74] The VE explained that these positions have no interaction with the public and little interaction with a supervisor.[75]

---

[64] R. at 57.
[65] R. at 58.
[66] Id.
[67] Id.
[68] Id.
[69] Id.
[70] Id.
[71] R. at 58.
[72] R. at 59.
[73] R. at 65.
[74] Id.
[75] R. at 66.

C.     **ALJ Wood's September 25, 2008 Decision**

In his September 25, 2008 decision, ALJ Wood found that plaintiff was not disabled during her insured period, which ended on June 30, 2003, but that she had been disabled since September 14, 2005.[76] Therefore, ALJ Wood denied plaintiff DIB but granted SSI.[77] In reaching this conclusion, the ALJ followed the five-step evaluation process outlined in the Social Security Act regulations ("regulations") to determine whether plaintiff was disabled.[78] Under the regulations the ALJ must consider: (1) whether the claimant is presently engaged in any substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude gainful activity; (4) whether the claimant is unable to perform her past relevant work; and (5) whether the claimant is unable to perform any other work existing in significant numbers in the national economy.[79] A finding of disability requires an affirmative answer at either step three or step five, while a negative answer at any step, other than step three, precludes a finding of disability.[80]

In addition to determining whether the plaintiff is disabled, for purposes of DIB, the ALJ must also determine the onset date of the disability and the date last insured.[81] If the onset date of disability is after the claimant's last date insured, then the claimant is not entitled to DIB.[82]

Before preceding with the disability determination process, ALJ Wood determined that the date last insured was June 30, 2003.[83] The ALJ then explained the applicable law and began

---

[76]R. at 13-20.
[77]R. at 20-21.
[78]20 C.F.R. §§ 404.1520; 416.920(a).
[79]*Id.*
[80]*Id.*
[81]20 C.F.R. § 404.130; SSR 83-20.
[82]*See* 42 U.S.C.A. § 423.
[83]R. at 13.

the five step process. At step one of the sequential process, ALJ Wood found that plaintiff had not engaged in substantial gainful activity since December 31, 2001, which is the date plaintiff alleged that her disability began.[84] At step two, ALJ Wood found that since December 31, 2001, plaintiff had a severe combination of depression, post-traumatic stress disorder, and a history of substance abuse.[85]

However, at step three, ALJ Wood concluded that this combination of impairments did not meet or medically equal a listing in the regulations.[86] In determining that plaintiff did not meet the listings, the ALJ noted that the record did not establish extreme limitations in one domain or marked limitations in two domains.[87]

Before moving to step four, the ALJ determined plaintiff's residual functional capacity ("RFC"). A claimant's RFC represents what work a claimant can perform despite his or her physical or mental limitation.[88] In this case, the ALJ made two RFC determinations: one prior to September 14, 2005 and one after September 14, 2005.[89] For the period before September 14, 2005, ALJ Wood made the following RFC determination: "[p]rior to September 14, 2005...the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: only occasional interaction with the public, co-workers and supervisors."[90] For the period after September 14, 2005, the ALJ made the following RFC finding:

> beginning on September 14, 2005, the claimant has had the residual functional capacity to perform a full range of work at all exertional levels but with the following

---

[84]R. at 16; *See* 20 C.F.R. § 404.1520(b).
[85]R. at 16.
[86]R. at 16; *See* 20 C.F.R. § 404, Subpart P, Appendix 1.
[87]R. at 16; *See* 20 C.F.R. § 404, Subpart P, Appendix 1.
[88]20 C.F.R. §§ 404.0000, 416.920(e), 416.945.
[89]R. at 16-18.
[90]R. at 16.

nonexertional limitations: she has marked limitations interacting with the public, co-workers and/or supervisors, would not be able to sustain a normal work routine without interruptions from psychologically-based symptoms.[91]

To support these two RFC determinations, the ALJ noted that prior to September 14, 2005, the record failed to establish disabling mental problems because the majority of the medical records relate to the time period well after September 14, 2005.[92] In fact, the ALJ noted that the only medical evidence from time period prior to plaintiff's last date insured were treatment notes from Dr. Podzamsky.[93] Although Dr. Podzamsky's notes indicated that plaintiff was seen for continuing depression in early 2002, ALJ Wood found this to be insignificant because plaintiff was working full-time during that time period.[94] The ALJ also noted that plaintiff had only mild restrictions in daily living, only moderate restrictions in the ability to socialize, and only mild restrictions in the ability to concentrate and attend to tasks.[95]

As for plaintiff's credibility during her testimony, the ALJ wrote, "the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible prior to September 14, 2005, to the extent they are inconsistent with the residual functional capacity."[96]

Moving to step four, ALJ Wood found that plaintiff was unable to perform past relevant work since the alleged onset date of December 31, 2001.[97] At step five, ALJ Wood found that, prior to September 14, 2005, there were a significant number of jobs in the national economy

---

[91] R. at 18.
[92] R. at 17.
[93] Id.
[94] Id.
[95] R. at 17.
[96] Id.
[97] R. at 18.

that the plaintiff could have performed.[98] However, beginning September 14, 2005, the ALJ determined that there were not a significant number of jobs in the national economy that plaintiff could perform.[99] Therefore, ALJ Wood determined the plaintiff disabled as of September 14, 2005.

Thus, ALJ Wood decided that September 14, 2005 was the disability onset date. ALJ Wood determined that September 14, 2005 was the proper onset date because there were regular and continuing mental health treatment records after that date.[100] The ALJ noted that plaintiff may have been disabled up to one year prior to September 2005.[101] However, the ALJ concluded that the precise date was irrelevant because ultimately the onset date was well after plaintiff's last date insured.[102]

Therefore, because plaintiff's last date insured was June 30, 2003 and plaintiff's disability onset date was determined to be September 14, 2005, the ALJ found plaintiff eligible for SSI but ineligible for DIB.[103]

### III. Standard of Review

The Court performs a *de novo* review of the ALJ's conclusions of law.[104] The ALJ's factual determinations are entitled to deference.[105] The Court will uphold the ALJ's decisions if it is supported by substantial evidence and is free from legal error.[106] Substantial evidence means

---

[98]*Id.*
[99]R. at 19.
[100]R. at 19.
[101]R. at 20.
[102]R. at 20.
[103]*Id.*
[104]*Prochaska v. Barnhart*, 454 F.3d 731, 734 (7th Cir. 2006).
[105]*Id.*
[106] 42 U.SC. § 405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

"such evidence as a reasonable mind might accept as adequate to support a conclusion."[107] Where conflicting evidence allows reasonable minds to differ, the responsibility for determining whether a plaintiff is disabled falls upon the ALJ and not the courts.[108] However, the decision of the ALJ is not entitled to unlimited judicial deference.[109] An ALJ must minimally articulate his reasons for crediting or rejecting evidence of disability.[110] The Court will conduct a critical review of the evidence and will not uphold the ALJ's decision if it lacks evidentiary support or an adequate discussion of the issues.[111]

## IV. Analysis

Plaintiff argues that ALJ Wood erred by concluding that September 14, 2005 was the disability onset date. Instead, plaintiff argues that the ALJ should have called on a medical expert to help with this determination. Plaintiff also contends that ALJ Wood erred at step three of the sequential process by improperly finding that plaintiff did not have a mental disorder that met the listings in the regulations. We will discuss each of these arguments in turn.

### A. Disability Onset Date Determination

Plaintiff argues that we should remand this case because ALJ Wood erred by not consulting with a medical advisor regarding the onset date of plaintiff's disability. The Commissioner argues that ALJ Wood satisfied his obligations under Social Security Ruling ("SSR") 83-20 because Dr. Beers considered whether plaintiff's onset date occurred prior to

---

[107]*Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (*quoting Richardson v. Perales*, 402 U.S. 389, 401 (1971))
[108]*Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990) (*quoting Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)).
[109]*Clifford*, 227 F.3d at 870.
[110]*Clifford*, 227 F.3d at 870 (*quoting Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir. 1992)).
[111]*Lopez ex. rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (*quoting Clifford,* 227 F.3d at 869).

September 14, 2005. The Commissioner further contends that Dr. Beers explicitly looked at the pre-June 30, 2003 period and considered Dr. Podzamsky's notes.

DIB will only be granted if the plaintiff can show that the disability existed when she was still insured for benefits.[112] It is the plaintiff's burden to show a disability existed prior to the date of last insured.[113] If the ALJ determines that the plaintiff is disabled as of the application date then SSR 83-20 applies and the ALJ must establish an onset date.[114] "The onset date of a disability is the first day an individual is disabled as defined in the Act and regulations."[115] Finally, we note that the ALJ cannot reject the claimant's testimony solely because there is not objective proof of the alleged onset date.[116]

In determining the onset date, SSR 83-20 requires the ALJ to look at the applicant's allegations, work history, medical records, and other evidence.[117] The onset date must be based on facts and cannot be inconsistent with medical evidence in the record.[118] If the onset date is not apparent from the medical evidence in the record, then the onset date may have to be inferred.[119] If the onset date must be inferred from the medical evidence, then the ALJ "should call on the services of a medical advisor."[120] If SSR 83-20 is applicable and the ALJ fails to apply SSR 83-20 in determining a claimant's onset date, then the Court should remand the case for further proceedings because the onset determination is not supported by substantial evidence.[121]

---

[112] 42 U.S.C, § 423(c); 40 C.F.R. § 404.140.
[113] 20 C.F.R. § 404.1512(c).
[114] *Scheck v. Barnhart*, 357 F.3d 697, 701 (7th Cir. 2004).
[115] SSR 83-20.
[116] *Id.*
[117] *Id.*
[118] SSR 83-20.
[119] *Id.*
[120] *Id.*
[121] *Briscoe v. Barnhart*, 425 F.3d 345, 350 (7th Cir. 2005) (holding onset date determination was not supported by substantial evidence because ALJ failed to apply SSR 83-20.)

ALJ Wood found that the plaintiff was disabled.[122] Because ALJ Wood found the plaintiff disabled, he was required to apply SSR 83-20 and establish the onset date.[123] Whether the ALJ was required to summon a medical advisor turns on whether the onset date was apparent from the medical evidence in the record.[124]

The onset date is not apparent from the medical evidence in the record. ALJ Wood stated that "[m]ost of the medical evidence in this case concerns a time frame well after the expiration of the last insured."[125] However, ALJ Wood also acknowledged Dr. Podzamsky's notes indicated that the plaintiff was experiencing symptoms, similar to her present symptoms, during her insured period. ALJ Wood seems to imply that evidence of regular and continuing treatment after September 14, 2005, supports a finding that the plaintiff was disabled and since there is no evidence of regular and continuing treatment between December 31, 2001 and June 30, 2003 then the plaintiff was not disabled.[126]

But the medical evidence in the record does not clearly establish that September 14, 2005 was the onset date of plaintiff's disability. The plaintiff complained of many of the same symptoms in 2006 to Dr. Chung that she did to Dr. Podzamsky between December 31, 2001 and June 30, 2003. In fact, both Dr. Chung and Dr. Podzamsky prescribed the plaintiff Wellbutrin in response to plaintiff's reported symptoms. In addition, Dr. Podzamsky diagnosed the plaintiff with dysthymic disorder in 2002. ALJ Wood did nothing to explain why he ignored this diagnosis nor did he complete an analysis as to whether the disorder was severe enough to consider the plaintiff disabled at that time. Further, the ALJ conceded that the onset date was not

---

[122]R. at 20.
[123]SSR 83-20.
[124]*Id.*
[125]R. at 17.
[126]R. at 19.

apparent when he stated, "the claimant *may* have become disabled within approximately one year prior to the September 2005 application date..."[127]

Since the onset date was not apparent from the medical evidence in the record, it was necessary to infer the onset date, which required ALJ Wood to consult a medical advisor.[128] However, the Commissioner argues that ALJ Wood did consult with medical advisor - Dr. Beers. The Commissioner argues that Dr. Beers explicitly considered whether the plaintiff was disabled between December 31, 2001 and June 30, 2003. However, ALJ Wood never justified the established September 14, 2005 onset date based on Dr. Beers reports or conclusions. ALJ Wood cites to a "recent consultative examiner" and then cites to Exhibit 18F.[129] Exhibit 18F is Dr. Langgut's addendum to his report, which discusses plaintiff's use of alcohol and drugs.[130] Even if the Court were to accept Dr. Lanngut as the medical advisor, his full report does not demonstrate that he considered whether plaintiff's symptoms between December 31, 2001 and June 30, 2003 were disabling.

ALJ Wood was required to apply SSR 83-20 to establish the proper onset date because the ALJ found plaintiff disabled as of the application date. ALJ Wood's decision and the medical evidence in the record reveal that the onset date was not apparent from the available medical evidence. Because the onset date was not apparent from the available medical evidence, the onset date had be inferred, which required ALJ Wood to consult with a medical advisor on the issue. ALJ Wood failed to consult with a medical advisor to establish the proper onset date and,

---

[127]R. at 20 (emphasis added).
[128]SSR 83-20.
[129] R. at 17.
[130] R. at 498-499.

therefore, ALJ Wood's finding that plaintiff was not disabled between December 31, 2001 and June 30, 2003 was not supported by substantial evidence.[131]

**B.     ALJ Wood's Determination that Plaintiff did not meet the Listings**

In addition to arguing that the ALJ erred in reaching a disability onset date determination, plaintiff argues that the ALJ erred in finding that plaintiff's impairment did not meet or equal an impairment listed in the regulations. Specifically, plaintiff points to listings 12.04 and 12.06[132] and argues that the ALJ ignored evidence that demonstrated plaintiff met these listings.  Plaintiff further argues that the evidence demonstrates that she met the listings prior to June 30, 2003 and, therefore, she is eligible for DIB. The Commissioner argues that the plaintiff failed to put forth sufficient evidence demonstrating that she met listing 12.04 or 12.06.

As noted earlier, at step three of the sequential disability determination process, the ALJ must decide whether the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude gainful activity.[133]  If the symptoms meet one of the listed impairments, the claimant is determined to be disabled.[134]  If not, then the ALJ proceeds with the sequential process.[135] In this circumstance, plaintiff alleges that she met both listings 12.04 and 12.06 under "paragraph B." To satisfy the "paragraph B" criteria, the mental impairment must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended

---

[131] *Briscoe*, 425 F.3d at 355; *Pilcher v. Massanari*, 139 F.Supp.2d 966,970 (N.D. Ill. 2001); *Gutka v. Apfel*, 54 F.Supp.2d 783, 788 (N.D. Ill. 1999).
[132]*See* 20 C.F.R. § 404, Subpart P, Appendix 1.
[133]20 C.F.R. §§ 404.1520; 416.920(a).
[134]*Id.*
[135]*Id.*

duration.[136] "Marked" is defined as more than moderate but less than extreme.[137] "Repeated episodes of decompensation, each of extended duration" is defined as either three episodes within one year or an average of once every four months, each lasting for at least two weeks.[138]

Here, the plaintiff argues that evidence in the record supports finding numerous extended episodes of decompensation, marked limitations in social functioning, and marked limitations in maintaining concentration, persistence, and pace.[139] The plaintiff argues that had the ALJ considered this evidence, he would have found plaintiff disabled at step three of the analysis.

However, ultimately the ALJ found the plaintiff disabled. There is no material difference whether this determination is made at step three or step five. Either way, the ALJ found plaintiff disabled. As we have discussed, once the ALJ found the claimant disabled, then he was required to refer to SSR 83-20 to determine the correct onset date.[140] Because we found compliance with SSR 83-20 insufficient here, we are ordering the case remanded to determine the correct onset date. Therefore, we find any error in the ALJ's step three analysis immaterial and harmless. Upon remand, the evidence raised by plaintiff relating to plaintiff's alleged episodes of decompensation, limitations in social functioning, and other limitations should be thoroughly considered by the ALJ and the medical expert.

## V. Conclusion

For the reasons set forth above, the Court finds the ALJ's September 25, 2008 decision is not supported by substantial evidence. Accordingly, the Court grants plaintiff's motion for

---

[136] 20 C.F.R. Pt. 404, Subpt. P, App. 1.
[137] *Id.*
[138] *Id.*
[139] *See* Plf's brief at 5-8.
[140] *See* SSR 83-20; *see also Scheck v. Barnhart,* 357 F. 3d 697, 701 (7th Cir. 2004) (stating that a finding of disability triggers the application of SSR 83-20).

summary judgment [dkts. 20, 22] and remands the case for further proceedings consistent with this opinion. The Court denies the Commissioner's motion for summary judgment [dkt 23].

**IT IS SO ORDERED**.

**ENTERED: November 22, 2011**            _____

**UNITED STATES MAGISTRATE JUDGE**

**Susan E. Cox**